UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PATRICK PIZZELLA,
ACTING SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF
LABOR,

        Plaintiff,

v.                          Civil Action No. 2:19-cv-00507

APEX PIPELINE SERVICES, INC.
a corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the agreed motion to approve and enter consent judgment, filed July 12, 2019.

### I. Background

Plaintiff Secretary of Labor R. Alexander Acosta ("the Secretary")[1] instituted this action on July 10, 2019, alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq ("FLSA" or the "Act"). The complaint alleges that defendant Apex Pipeline Services, Inc. ("Apex") violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA during the period beginning April 1, 2016 and ending March 23, 2018. Specifically, the Secretary alleges that defendant violated

---

[1] Acting Secretary of Labor Patrick Pizzella was substituted for R. Alexander Acosta as the plaintiff in this action. See ECF No. 8.

Sections 7 and 15(a)(2) by failing to pay employees the overtime premium rate for hours worked over 40 hours in a workweek. Compl. ¶¶ 5-6. Defendant also allegedly violated Sections 11(c) and 15(a)(5) of the FLSA by failing to keep accurate records of its employees, such as their daily and weekly hours. Id. ¶ 7. As a result of these violations, Schedule A attached to the complaint identifies named employees who are owed for hours worked at rates below those required by Section 7 of the FLSA.

The consent judgment, inter alia, enjoins Apex from violating the provisions of Sections 6, 7, 11(c), and 15 of the FLSA, enjoins and restrains Apex from withholding gross back wages in the amount of $121,019.53, plus liquidated damages of the same amount, for a total of $242,039.06 due to the employees and former employees identified in Schedule A.

## II. Discussion

Our court of appeals has observed that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." Szaller v. Am. Nat'l Red Cross, 293 F.3d 148, 152 (4th Cir. 2002) (quoting Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002)); see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland, 478 U.S. 501, 519 (1986); Alexander v. Britt, 89 F.3d 194, 199 (4th Cir. 1996).

It has expanded upon this principle in <u>Smyth v. Rivero</u>, observing that a court is expected, when presented with a proposed consent decree, to scrutinize the accord and make certain findings prior to entry:

> Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court. As Judge Rubin noted in <u>United States v. Miami</u>,
>
>> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should . . . examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful.

282 F.3d 268, 280 (4th Cir. 2002).

The Fourth Circuit has described the standards governing consideration of a proposed consent decree as follows:

> In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged. <u>See</u> <u>Durrett v. Housing Authority of City of Providence</u>, 896 F.2d 600, 604 (1st Cir.1990). Nevertheless, a district court should not blindly accept the terms of a proposed settlement. <u>See</u> <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1173 (4th Cir. 1975). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest."

> United States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991).  In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case.  See Flinn, 528 F.2d at 1172-73.  While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision."  Id. (internal quotation marks omitted).  In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement."  Carson v. Am. Brands, Inc., 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, J., dissenting), adopted by Carson v. Am. Brands, Inc., 654 F.2d 300, 301 (4th Cir. 1981) (en banc) (per curiam).

United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999).

The court is satisfied that this consent decree satisfies the applicable factors.  An order of the court, entered on September 13, 2019, scheduled a hearing set for October 4, 2019 to receive information and evidence relating to the reasonableness and fairness of the proposed consent judgment.  The court cancelled the October 4, 2019 hearing after the parties stipulated that the proposed consent judgment is fair and reasonable and provided a sworn statement from Wage and Hour Investigator Justin Williams ("Williams"), who conducted the investigation that resulted in this litigation.  Joint Mot. Cancel Hr'g ("Joint Mot.").  Citing the Williams Declaration, the parties assured the court that the "back wages set forth in the Consent Judgment, $121,019.53, reflect the total amount of

back wages Plaintiff has determined are due to the employees listed on the Schedule A attached to the July 10, 2019 Complaint." Id. at 2; Id., Ex. A, Williams Decl. ¶¶ 10, 15. They further confirmed that "the liquidated damages set forth in the Consent Judgment, $121,019.53, reflect the total amount of liquidated damages due to the employees in this case pursuant to 29 U.S.C. § 216(c) based on the back wages due." Id. at 2; Id., Ex. A, Williams Decl. ¶¶ 11, 15.

In view of the further evidence furnished by the parties' joint motion and the Williams Declaration, the settlement appears fair, adequate, and reasonable. Although the parties did not conduct further discovery, Williams attested that "by signing the consent judgment, Apex agreed to pay the full amount of back wages and liquidated damages [the Department of Labor or "DOL"] determined the company owed its employees" based on his investigation from April 1, 2016 through March 23, 2018. Joint Mot., Ex. A, Williams Decl. ¶¶ 4, 15. There are no objections to the proposed consent judgment and the parties are represented by experienced counsel. Accordingly, taking into account the relevant factors, the court finds, for the reasons stated herein, that the proposed order is fair, adequate, and reasonable, and not illegal, a product of collusion, or against the public interest.

Of course, "under the FLSA, . . . there is a judicial prohibition against the unsupervised waiver or settlement of claims." Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007) superseded by regulation on other grounds as stated in Whiting v. Johns Hopkins Hosp., 416 Fed. Appx. 312 (4th Cir.2011); see also Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to . . . overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived[.]"); Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (noting that unsupervised settlement is prohibited for fear that employers would coerce employees into waiving or settling their claims).

As a result, the FLSA permits only two ways of settling or compromising back wage claims. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982). First, under 29 U.S.C. § 216(c) the Secretary of Labor may supervise the payment of unpaid wages owed to employees. Id. at 1353; Taylor v. Progress Energy, Inc., 415 F.3d 364, 374 (4th Cir. 2005).[2] Second, under 29 U.S.C. § 216(b) employees may

---

[2] Section 16(c) provides, in relevant part: "The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and

bring a direct action against their employer to recover back wages. Lynn's Food, 679 F.2d at 1253.

The court must ensure that the settlement "'reflect[s] a . . . compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute,'" Kianpour v. Rest. Zone, Inc., No. 11-0802, 2011 WL 5375082, at *2 (D. Md. Nov. 4, 2011) (quoting Lopez v. NTI, LLC, 748 F.Supp.2d 471, 478 (D. Md. 2010)), rather than serving as "a mere waiver of statutory rights brought about by an employer's overreaching." Lynn's Food, 679 F.2d at 1354. See also Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 703 (1945) (asking "whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages").

In Lynn's Food Stores, Inc. v. United States, for example, the employer ("Lynn's") sought to enter into a separate private settlement agreement with the employees after failing to

---

the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." 29 U.S.C. § 216(c).

7

negotiate a settlement with the DOL. 679 F.2d 1350, 1352 (11th Cir. 1982). Under the proposed private settlement agreement, the employees waived their claims for only a small fraction of what the DOL had determined Lynn's owed its employees for back wages and liquidated damages. Id. The Eleventh Circuit was concerned about approving a settlement agreement between an employer and employees where the employees did not initiate the action in an adversarial process, there was no evidence that the employees had consulted counsel, and "the employees seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute." Id. at 1354. Therefore, the court instructed as follows:

> Other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

Id. at 1355.

Here, the DOL instituted this action under Sections 16(c) and 17 of the FLSA as opposed to employees suing Apex directly. Compl. ¶¶ 1, 5; 29 U.S.C. §§ 216(c), 17. According to Williams' sworn statement, Apex only agreed to this settlement after Williams conducted a thorough investigation and

8

presented his conclusions to the company. Joint Mot., Ex. A, Williams Decl. ¶¶ 13-14. Although Apex did not contest Williams' calculations, the court has no reason to dispute Williams' determination of what Apex fully owed to its employees, which was based on Apex's time and payroll records and interviews with Apex employees. Id. ¶¶ 7-12. Section 16(c) explicitly allows employees to waive their rights to FLSA compensation by accepting payment of unpaid wages when the Secretary of Labor supervises the payment and the back wages are paid in full. 29 U.S.C. § 216(c); <u>Lynn's Food</u>, 679 F.2d at 1353 n.6 ("The waiver provision found in section 216(c) was intended to create an incentive for employers to voluntarily accept settlements supervised by the Department of Labor."). Therefore, the court finds no indication of coercion or a lack of a bona fide dispute.

As for determining whether the proposed settlement agreement is fair and reasonable, the court considers: (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, together with the injunctive relief designed to assure future FLSA compliance

by defendant. See Harper v. ELK Run Coal Co., Inc., No. 11-305, 2012 WL 1999429, at *3 (S.D.W. Va. June 4, 2012) ("While the Fourth Circuit has not directly addressed the factors to consider in determining whether a settlement reached in an FLSA case is fair and reasonable, federal courts typically consider the fairness factors utilized in determining court approval of class action settlements under Federal Rule of Civil Procedure 23(e).").

Although the parties have not engaged in discovery, there is no evidence of fraud or collusion. The Secretary's counsel is no doubt competent as to the FLSA and adequate settlement procedures, and none of the lawyers involved in drafting the proposed consent judgment has objected to it. The Williams Declaration confirms that the settlement figure is designed to compensate the employees for the total amount of overtime wages owed plus liquidated damages.

The court finds the settlement amount reasonable inasmuch as it provides the amount of damages calculated by the Secretary. Accordingly, the court concludes that the proposed consent judgment is fair and reasonable, and that the amount the Secretary will receive from Apex, and thereafter distribute to the employees, is appropriate.

Finally, although neither the FLSA nor Fourth Circuit precedent necessarily requires such review, district courts in

the Fourth Circuit tend to evaluate the parties' agreement as to attorneys' fees. See, e.g., Duprey v. Scotts Co. LLC, 30 F.Supp.3d 404, 411 (D. Md. 2014). Here, the DOL has not sought any attorneys' fees, and the proposed order sets forth that "each party will bear its own fees and other expenses incurred by such party." Accordingly, negotiations as to attorneys' fees appear to have had no effect on the proposed settlement amount.

### III.  Conclusion

Accordingly, it is hereby ORDERED as follows:

1. That plaintiffs' unopposed motion to enter the proposed consent decree be, and it hereby is, granted;

2. That the proposed consent decree be, and it hereby is, entered with the court's approval this same date; and

3. That this action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

Enter: November 8, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge